UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARCUS FRIEND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-03033-JPH-DML |
| | ) |
| NICE-PAK PRODUCTS, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Defendant, Nice-Pak Products, Inc. ("Nice-Pak"), fired Plaintiff, Marcus Friend, after he threatened to put one of his coworkers "in the concrete." Mr. Friend sued Nice-Pak for discrimination and retaliation under Title VII, alleging that he was punished more severely than other employees because he is white and complained of discrimination. Nice-Pak moved for summary judgment. Because Mr. Friend has presented enough evidence to raise triable issues, the Court **DENIES** the motion. Dkt. [28].

## I.
## Facts and Background

Because Nice-Pak has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Friend and draws all reasonable inferences in Mr. Friend's favor. *Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009). Nice-Pak is global manufacturer of wet-wipe products. Dkt. 29-8 ¶ 3. It operates a plant in Mooresville, Indiana where Kristina Fox acts as the Human Resources Manager. Dkt. 29-2 at 9:12-16; dkt. 29 at 2. One of Ms. Fox's duties is enforcing Nice-Pak's Workplace

1

Violence Policy (the "Violence Policy"), which states that all workplace violence, including any threats of harm, is treated with zero tolerance. Dkt. 29-4. Violators are "subject to disciplinary action, up to and including immediate termination." *Id.*

Mr. Friend is a white male who worked for Nice-Pak at the Mooresville location between July 2015 and November 2016. Dkt. 29-1 at 44:15-22; dkt. 29-2 at 47:1-3. Shortly after he was hired, he heard that two white employees were fired for racing forklifts. Dkt. 29-1 at 12:20-24, 17:5-9. His supervisor told him that any horseplay with the equipment would result in automatic termination. *Id.* at 16:4-19. Then, in October 2016, Mr. Friend witnessed a Hispanic employee drive a forklift around the worksite, blowing the horn and doing donuts for two to three hours. *Id.* at 34:17-37:14. The employee pulled a makeshift mannequin behind the forklift with a noose around the mannequin's neck saying that was how he would treat "skinheads" on Halloween. *Id.* at 34:17-35:4, 40:1-17. Nice-Pak gave the employee a written warning for this behavior, dkt. 29-2 at 73:14-74:9, leading Mr. Friend to believe that Nice-Pak punished the white employees more harshly than the Hispanic employee for the same conduct, dkt. 29-1 at 63:18-64:4.

An African-American employee, Mr. Phillips, believed that Mr. Friend told their supervisor about the Hispanic employee's antics. Mr. Phillips called Mr. Friend "a snitch" and warned Mr. Friend's coworkers that Mr. Friend would tell on them. *Id.* at 87:14-23, 119:22-120:7. Comments like these continued for several weeks, with Mr. Phillips lamenting that he had to work with "snitches"

2

and claiming that Mr. Friend was wearing a wire. *Id.* at 27:20-28:8, 66:7-19. The situation culminated when Mr. Friend heard Mr. Phillips say he would shoot a white person who told on him if it caused him to lose his job. *Id.* at 65:22-66:6.

Distressed by these comments, Mr. Friend called Ms. Fox to report the behavior on the Tuesday before Thanksgiving. *Id.* at 13:19-14:20. He left a message saying:

> Krista [sic] Fox, it's Marcus Friend. I need to hear from you today because it's fixing to go down tonight. If I don't hear from you today, so, because I'm putting somebody down in the concrete tonight, if I don't hear from you tonight. Give me a call . . . . I need to hear from you today, 'cause this is serious. This has been going on for eight months, the issue. It's either be separated or I'll go another route.

*Id.* at 55:20-56:8.

Ms. Fox called Mr. Friend the next day, and when Mr. Friend missed the call, she left a message saying she was out of the office on vacation over the Thanksgiving weekend. *Id.* at 12:5-11. When Mr. Friend called her back, he was not able to reach her. *Id.* at 12:12-24. On the Monday after Thanksgiving, Mr. Friend and Ms. Fox finally spoke over the phone and Mr. Friend told Ms. Fox that he believed the white employees who had raced the forklifts were treated unfairly and that he could not work in the "hostile environment" created by Mr. Phillips's harassment. *Id.* at 12:15-13:18. Ms. Fox told him that she was "sorry to hear that." *Id.* at 13:17-18.

Unsatisfied with that response, Mr. Friend went to Ms. Fox's office the next day. *Id.* at 62:4-65:10. Mr. Friend reported Phillips's claim that he would

3

shoot a white coworker who got him in trouble. *Id.* at 65:22-66:6. Again, he mentioned that the Hispanic employee was not fired for misusing the equipment and said that he believed the employee was given less severe discipline because he was not white. *Id.* at 63:18-64:16. He also mentioned that another coworker had been putting grease on the equipment, and he told Ms. Fox that he was "going to hurt" this employee if the pranking continued. *Id.* at 68:24-69:10. By the end of the conversation, Mr. Friend believed Ms. Fox was not taking his complaints seriously, so he asked for the phone number of her supervisor, Ms. Pirozzi. *Id.* at 72:5-22; dkt. 29-2 at 20:3-6.

Later that day, Mr. Friend had a phone conversation with Ms. Pirozzi. Dkt. 29-1 at 73:12-19. She offered to arrange a meeting between Mr. Friend, Mr. Phillips, and Ms. Fox, but Mr. Friend rejected this offer. *Id.* at 75:18-76:20. Mr. Friend asked if he could be moved to the day shift, but Ms. Pirozzi denied this request. *Id.* at 76:18-77:15.

The next day, Ms. Fox called Ms. Pirozzi and the director of security to get their opinion on the next steps they should take to address Mr. Friend's threat. Dkt. 29-2 at 47:25-48:8. Together, they decided to terminate Mr. Friend. *Id.* at 47:1-19. According to Nice-Pak, Mr. Friend was terminated because of the threats he made to his coworkers in his voicemail and during his meeting with Ms. Fox. *Id.* at 65:12-21; dkt. 29-7. Mr. Phillips was not disciplined for threatening to shoot a white coworker who told on him. Dkt. 29-2 at 70:6-23.

4

On September 1, 2017, Mr. Friend filed a complaint against Nice-Pak under Title VII, alleging that he was terminated because of his race (Count I) and was retaliated against for reporting discrimination (Count II).[1]  Dkt. 1.  Nice-Pak has moved for summary judgment on all claims.  Dkt. 28.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

Mr. Friend alleges Nice-Pak discriminated against him on the basis of his race and retaliated against him.  Title VII prohibits an employer from discharging an employee because of that person's race, among other grounds.

---

[1] Mr. Friend also alleged he was subjected to a "hostile work environment because of his race."  Dkt. 1 ¶ 25.  In response to Nice-Pak's motion, Mr. Friend said he is no longer pursuing this claim.  Dkt. 32 at 12, n.7; dkt. 27.

42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" conducted under Title VII. *Id.* § 2000e–3(a). Nice-Pak claims it is entitled to summary judgment because there is no evidence that Mr. Friend's race or complaints of discrimination motivated his termination. Rather, the undisputed facts show that Nice-Pak terminated Mr. Friend's employment because he violated the Violence Policy.

**A.    Race Discrimination (Count I)**

Nice-Pak claims Mr. Friend was fired for violating its Violence Policy. Dkt. 1 ¶¶ 24-27. Summary judgment on this claim turns on "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

In the absence of evidence of discriminatory intent, Mr. Friend claims he can make a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1993). Under this burden-shifting framework, a plaintiff must establish "first, that he is a member of a protected class; second, that he was meeting his employer's legitimate performance expectations; third, that he suffered an adverse employment action; and fourth, that he was treated less favorably than similarly situated individuals who are not members of his protected class." *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).

6

If Mr. Friend satisfies these four requirements, the burden then shifts to Nice-Pak to provide a legitimate, nondiscriminatory reason for the termination. *McDonnell Douglas*, 411 U.S. at 802. If it does so, the burden shifts back to Mr. Friend to establish that Nice-Pak's proffered reason is a pretext for unlawful discrimination. *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017).

Here, Nice-Pak concedes that Mr. Friend suffered an adverse employment action, but it argues that he cannot meet his burden on the other three elements of the *McDonnell Douglas* test. And even if he could, Nice-Pak continues, Mr. Friend's claim of discrimination still fails because Nice-Pak had a legitimate, nondiscriminatory reason for terminating Mr. Friend, *i.e.*, he threatened to hurt his coworkers.

### 1. Prima facie case

#### a. Membership in a protected class

"[T]he protections of Title VII are not limited to members of historically discriminated-against groups." *Ballance*, 424 F.3d at 617. When the plaintiff is not a member of a protected class, the first prong of the *McDonnell Douglas* standard requires a showing of "reverse discrimination." *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 457 (7th Cir. 1999). To demonstrate reverse discrimination, a plaintiff must show "background circumstances" showing that the employer has "reason or inclination to discriminate invidiously against whites" or evidence that "there is something 'fishy' about the facts at hand." *Id.* at 455 (quoting *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993)).

7

This requirement is imprecise and can be met in several ways. *Id.* (listing examples).

For example, a plaintiff can satisfy this requirement by demonstrating that an employer favors minorities when administering discipline. In *Ballance, 424 F.3d at 618*, the plaintiff submitted a report stating that many of the defendant's employees believed that women and minorities were given special treatment for promotions or disciplinary action. The court held that this evidence satisfied the background circumstance necessary under the *McDonnell Douglas* test because it suggested that the defendant "gave preferences to minorities and women in the disciplinary process." *Id.*

Here, Mr. Friend claims that statements Nice-Pak made to the Equal Employment Opportunity Commission ("EEOC") in another charge and investigation show reverse discrimination. Dkt. 32 at 14-15. In that case, a white employee who engaged in "similar behavior" as an African-American employee was terminated while the African-American employee only received a written warning. Dkt. 33-3 at 1. While Nice-Pak said that the African-American employee was "treated more leniently that his White coworker," Nice-Pak went on to explain that the white employee was treated differently because he had a larger role in the misconduct and had prior discipline problems. *Id.* at 2. Mr. Friend does not identify any evidence that calls Nice-Pak's explanation into question, so this letter does not suggest that Nice-Pak discriminates invidiously against whites or otherwise provide evidence of "fishy" circumstances.

8

But as discussed in the disparate treatment section below, Mr. Friend has proffered evidence that a non-white employee, Robert Phillips, also violated Nice-Pak's Violence Policy yet was not disciplined. This comparator evidence creates contested factual issues as to why Mr. Friend and Mr. Phillips were treated differently. Just as evidence that an employer who terminates African-American employees while only giving warning to white employees may suggest discrimination, Mr. Friend's comparator evidence may suggest that Nice-Pak has a reason or inclination to discriminate against white employees. *See Hague v. Thompson Distribution Co.*, 436 F.3d 816, 822 (7th Cir. 2006).

Citing *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 679 (7th Cir. 2012), Nice-Pak argues that evidence that minority employees received more lenient discipline than white employees cannot meet the standard of "fishy" background circumstances. Dkt. 34 at 8-9. But *Good*, which was overruled on other grounds, is distinguishable because the plaintiff there failed to demonstrate that the employer acted with an "anti-white bias" when enforcing discipline. *Good*, 673 F.3d at 679. Nice-Pak also cites *Formella v. Brennan*, 817 F.3d 503, 512 (7th Cir. 2016) in support of its position, but that case is also inapposite. The plaintiff in *Formella* waived his argument under the first prong of the *McDonnell Douglas* test because he was white yet failed to allege reverse discrimination, claiming instead that he was a member of a protected class.

As the Court held in *Ballance*, evidence of preferential treatment of minorities when administering discipline can satisfy the first prong of the

9

*McDonnell Douglas* test, and Mr. Friend satisfied that prong here. When the comparator evidence discussed below is interpreted in a light most favorable to Mr. Friend, it is enough to make a prima facie showing of reverse discrimination.

### b. Meeting performance standards

Nice-Pak claims that Mr. Friend was not meeting its performance standards when it fired him. It is undisputed that prior to November 2016, Mr. Friend was performing up to Nice-Pak's expectations. In its evaluations of Mr. Friend's performance, Nice-Pak concluded that Mr. Friend met the performance standards in every measured category. Dkt. 33-5. Furthermore, Ms. Fox did not have any performance issues with Mr. Friend and she was not aware of any plans to terminate him. Dkt. 29-2 at 45:2-46:12.

While not disputing this evidence, Nice-Pak argues that Mr. Friend was not meeting its performance standards after November because he "admittedly threatened to harm his coworkers" during the phone call and subsequent meeting with Ms. Fox. Dkt. 34 at 9. Mr. Friend claims, however, that Nice-Pak did not uniformly enforce its Violence Policy on all employees because other employees also violated the policy yet were not terminated.

If a plaintiff produces evidence implying that an employer applied its legitimate employment expectations in a disparate manner, the second prong of the *McDonnell Douglas* test merges with the fourth prong. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (citing cases). For example, in *Flores v. Preferred Tech. Grp.*, 182 F.3d 512, 514 (7th Cir. 1999), a Hispanic

woman was terminated after she violated company policy by participating in an unlawful work stoppage. The plaintiff admitted she broke the rules but alleged that she was disciplined more harshly than non-Hispanic rule-breakers. *Id.* at 515. The court held that the plaintiff did not need to separately satisfy the second prong of the *McDonnell Douglas* test because it "makes little sense . . . to discuss whether she was meeting her employer's reasonable expectations" when the plaintiff claims that those expectations were not applied uniformly. *Id.*

Ultimately, the question is whether Mr. Friend has identified evidence from which a reasonable jury could conclude that his race is the reason he no longer has a job at Nice-Pak. It's undisputed that Mr. Friend's performance was satisfactory up until his termination. The dispute centers on whether he would still have a job if he were not white. Nice-Pak's treatment of non-white employees who violated the Violence Policy in comparison to its treatment of Mr. Friend must be considered by a jury. Therefore, the remainder of the Court's analysis of this claim merges with the fourth prong of the *McDonnell Douglas* addressed below.

### c. Adverse employment action

Neither party disputes that Mr. Friend suffered an adverse employment action when Nice-Pak terminated him. Dkt. 32 at 17-19; dkt. 34 at 8. Therefore, Mr. Friend has satisfied the third prong of the *McDonnell Douglas* test.

11

#### d. Disparate treatment

Nice-Pak argues that Mr. Friend was not punished more severely than other employees for similar conduct. The Court must consider whether "another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006). While such "comparators" must be comparable to the plaintiff, they need not be identical. *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010) (stating that the court looks for "for a substantially similar employee, not for a clone."). When making this determination, the Court considers whether the individuals "(1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (internal quotations omitted).

Here, Mr. Friend has identified another employee—Robert Phillips[2]—who he alleges engaged in similar conduct but suffered less severe discipline because he is not white. Mr. Friend and Mr. Phillips were both "warehouse operators" for Nice-Pak. Dkt. 29-2 at 33:21-24, 40:4-7. For both men, Ms. Fox determined whether their conduct violated the Violence Policy and what form of

---

[2] Mr. Friend also claimed Phillip Palmer, Saveen Uppal, and Monica Robinson are also similarly situated employees. Because "he only needs one comparator" to satisfy his burden, *Gaines v. K-Five Const. Corp.*, 742 F.3d 256, 262 (7th Cir. 2014), and the Court concludes that Mr. Phillips is a comparator, the Court does not consider whether Mr. Palmer, Mr. Uppal and Ms. Robinson qualify as comparators.

discipline would apply. Dkt. 33-2 at 47:1-48:8, 70:15-17. Mr. Phillips and Mr. Friend worked on the same shift and had the same warehouse supervisors. Dkt. 29-1 at 75:15-76:20; Dkt. 29-2 at 42:11-24. Also, both men were subject to the same standard—Nice-Pak's Violence Policy. Dkt. 29-4; Dkt. 29-2 at 68:10-69:24.

Both men violated Nice-Pak's Violence Policy by threatening to harm their coworkers. Mr. Friend left a voicemail saying he was going to put one of his coworkers "in the concrete." Dkt. 29-2 at 52:22-53:9. Mr. Phillips told his coworkers that he would shoot any white person who told on him. Dkt. 29-1 at 65:11-66:6. And it is undisputed that Ms. Fox knew about both men's threats to harm their fellow coworkers. Dkt. 34 at 4, n.2.

Nice-Pak terminated Mr. Friend but did not terminate or otherwise discipline Mr. Phillips—who had been disciplined just a few months before and received a "Final Written Warning"—for violating its Violence Policy. Dkt. 29-2 at 70:6-71:25; dkt. 33-3 at 1. Mr. Phillips is African American, and Mr. Friend is white. Dkt. 29-2 at 33:21-34:3, 36:12-15. From this evidence, a reasonable juror could conclude that Mr. Friend would have kept his job if he were a different race and everything else remained the same. *Ortiz*, 834 F.3d at 764.

Nice-Pak argues that Mr. Phillips's conduct was not sufficiently similar because Mr. Phillips did not threaten a specific person. Dkt. 34 at 10. But whether any two people are similar enough to support a Title VII claim is "usually a question for the fact-finder." *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009). Summary judgment on this issue is thus only appropriate

13

when "no reasonable fact finder could find that plaintiffs have met their burden." *Id.* Here, Nice-Pak terminated a white employee who made a threat and took no disciplinary action with respect to a non-white employee who made a threat. Weighing the differences of the conduct and the reason for Nice-Pak's handling of the two situations is a task for the jury, not the Court.

Viewing all evidence in a light most favorable to Mr. Friend, he has made a prima facie case of discrimination, so the burden shifts to Nice-Pak to provide a non-discriminatory reason for his termination. Nice-Pak has satisfied this burden by proffering evidence that Mr. Friend threatened violence against coworkers and Ms. Fox took his threat seriously. The burden shifts back to Mr. Friend to identify evidence from which a reasonable juror could conclude that Nice-Pak's stated reason was pretextual.

### 2. Pretext

Nice-Pak argues that Mr. Friend cannot show that its nondiscriminatory reason for Mr. Friend's termination—he admittedly threatened to hurt his coworkers—was pretextual. To establish pretext, Mr. Friend must present evidence suggesting that the reason the employer gave for the termination was untrue. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). The question is not whether Mr. Friend's termination was fair, but "whether the employer honestly believed the reason it has offered to explain the discharge." *Id.*

To establish pretext for summary judgment purposes, Mr. Friend need only cast doubts on Nice-Pak's proffered reasons for the termination. *O'Connor*

*v. DePaul Univ.,* 123 F.3d 665, 670 (7th Cir. 1997). If Mr. Friend "succeeds in casting doubt on the proffered reason," the issue must be left for the jury. *Id.*; *Zaccagnini v. Charles Levy Circulating Co.,* 338 F.3d 672, 676 (7th Cir. 2003) (stating that a plaintiff need only point to facts that place a defendant's explanation "in doubt" to survive summary judgment).

The same evidence used to establish disparate treatment can be sufficient to cast doubt on an employer's stated reason for the termination. *Coleman,* 667 F.3d at 857 (stating that comparator evidence is relevant at the pretext stage, citing cases). Here, the difference in how Nice-Pak treated Mr. Friend for having made threatening statements compared to how Nice-Pak treated Mr. Phillips for having made threatening statements is enough to cast doubt on Nice-Pak's stated reasons for having terminated Mr. Friend and thus create a triable issue.

Nice-Pak argues that Mr. Friend's admission that he violated the Violence Policy "should end the pretext inquiry." Dkt. 34 at 12. While it is understandable why Nice-Pak chose to take disciplinary action in response to Mr. Friend's statements, the relevant question is whether the Violence Policy was selectively enforced based on race. For example, in *Coleman*, the defendant terminated the plaintiff's employment after the employer learned that the plaintiff was thinking about killing her supervisor. 667 F.3d at 844. While recognizing that the plaintiff violated the company policy prohibiting "Violent and/or Threatening Behavior," the court nevertheless held that summary judgment was not appropriate on the plaintiff's Title VII claim

15

because there was evidence that some employees "received more lenient punishment for a comparably serious violation of the same rule." *Id.* at 851, 859; *see also Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001).

In total, Mr. Friend has identified evidence that could support a finding that other employees who were situated similarly to him and of a different race may have been treated less severely for comparable violations of the Violence Policy. Evidence of "selective enforcement of a rule 'calls into question the veracity of the employer's explanation'", *id.* at 857, and thus is evidence from which a reasonable juror could conclude that Mr. Friend would have kept his job if he were a different race and everything else remained the same. *Ortiz*, 834 F.3d at 764. While a reasonable juror could instead accept Nice-Pak's explanation, this determination needs to be made by a jury after making credibility and other factual findings. Accordingly, the Court **DENIES** Nice-Pak's motion for summary judgment on Mr. Friend's discrimination claim.

## B. Retaliation (Count II)

Nice-Pak argues that it is entitled to summary judgment on Mr. Friend's claim of retaliation because Mr. Friend was not terminated for reporting discrimination. Like his claim of race discrimination, Mr. Friend can use the *McDonnell Douglas* test to "boost" his retaliation claim in the absence of actual evidence of retaliation. *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 643 (7th Cir. 2002). To meet this test, Mr. Friend must show that "(1) he engaged in a protected activity, (2) he performed his job duties according to his employer's legitimate expectations, (3) he suffered an adverse action, and (4) he

was treated less favorably than similarly situated employees who did not engage in protected activity." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). Like the race claim, if Mr. Friend establishes a prima facie case of retaliation, the burden moves to Nice-Pak to justify the action, then back to Mr. Friend to show that the reason is pretext. *Id.*

For the first prong, bringing complaints of Title VII violations "up the chain of command" is a statutorily protected activity. *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772 (7th Cir. 2008). Here, neither party disputes that Mr. Friend engaged in this statutorily protected activity. Mr. Friend testified that he called Ms. Fox several times and left voicemails alleging discrimination and saying that he "was going to take [his] complaint to the EEOC." Dkt. 29-1 at 12:1-4. He also claims he brought up the issue of discrimination again during his meeting with Ms. Fox, arguing that white employees were punished more severely than non-white employees. *Id.* at 63:18-64:4. Nice-Pak has conceded, for the purposes of its motion, that "Mr. Friend engaged in protected activity." Dkt. 34 at 4. Therefore, Mr. Friend has satisfied the first prong.

The second, third, and fourth prongs of this test are identical to the *McDonnell Douglas* framework used for discrimination, so the Court's analysis is the same. As explained above, Mr. Friend demonstrated that he was performing up to standards, he suffered an adverse action, and another employee engaged in similar conduct but did not suffer an adverse action (there is no evidence Mr. Phillips reported discrimination, dkt. 29-2 at 33:21-

17

34:6). And like his race discrimination claim, Mr. Friend has provided sufficient evidence through the *McDonnell Douglas* test to create a triable issue as to whether his complaints of discrimination played a role in his termination. Therefore, the Court **DENIES** summary judgment on this claim.

## IV.
## Conclusion

For the reasons explained above, Nice-Pak's motion for summary judgment is **DENIED**. Dkt. [28].

**SO ORDERED.**

Dated: 6/13/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Eric J. Hartz
CLEVELAND LEHNER CASSIDY
eric@clcattorneys.com

Meghan Uzzi Lehner
CLEVELAND LEHNER CASSIDY
meghan@clcattorneys.com

Michael W. Padgett
JACKSON LEWIS PC (Indianapolis)
padgettm@jacksonlewis.com

Melissa K. Taft
JACKSON LEWIS PC (Indianapolis)
melissa.taft@jacksonlewis.com